IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02723-RM-MEH

OLUSEGUN ADENOWO,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS, a/k/a SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO,

    Defendant.

## ORDER ON MOTION FOR PROTECTIVE ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion for Protective Order [filed July 21, 2015; docket #59]. The Motion was referred to me for disposition. Docket #60. The matter was fully briefed on September 30, 2015, and I find oral argument would not materially assist me in deciding the Motion. For the reasons that follow, the Motion is **granted**.

**I.    Facts**

    Plaintiff was a teacher for Denver Public Schools from 2002 until his termination on February 13, 2013. His termination was based on alleged performance issues. He requested and received a six-day hearing before an administrative law judge (ALJ) concerning his proposed termination. The ALJ agreed with the school district's action. Thereafter, the district's board of education dismissed Plaintiff. He appealed his dismissal to the Colorado Court of Appeals, which affirmed. He did not litigate any discrimination claims in the state proceeding.

    Thereafter, Plaintiff filed this lawsuit. He asserts claims for race discrimination under Title

VII, age discrimination under the Age Discrimination in Employment Act (ADEA), and a breach of contract.

Superintendent of Schools Tom Boasberg initiated Plaintiff's dismissal by recommending to the board of education that he be dismissed. Of course, Superintendent Boasberg did not conduct the investigation that produced the alleged justification for the dismissal but relied on both legal counsel and the school district's human resources department for the information he used in recommending dismissal. Allegra "Happy" Haynes is president of the school board, which approved Plaintiff's dismissal. Of course, President Haynes did not conduct the investigation that produced the alleged justification for the dismissal, but relied on both legal counsel and the decision by the ALJ for the information she used in approving dismissal.

Plaintiff seeks to take the depositions of Boasberg and Haynes. Defendant seeks to prevent their depositions, relying primarily on the "Apex Doctrine," which addresses a request by a plaintiff in a lawsuit to take the deposition of a high level executive.

## II.     Discussion

I do not find it necessary to address the bulk of the parties' arguments, for this reason. On pages 2-3 of Plaintiff's response (Docket #76), Plaintiff lists the reasons for the two depositions, as follows verbatim:

Boasberg

1. "[P]urpose of and delegated development of [teacher evaluation and termination] policies to others in the administration or others in the district;
2. [W]hether these delegations were ultra vires;
3. [P]rocesses established by the school board and/or the superintendent for termination of teachers, the degree to which the Superintendent and the Board have delegated the right to institute these processes to others and to whom they have been delegated, and how and when the delegation was made;
4. [W]hether the Board has been informed of these, and of the Departmental policies and practices-some of which are unwritten-regarding evaluation

       'ghost writers' and 'HR partners'.

5. [T]he apparent 'advice of counsel' assertions made in [Boasberg's] affidavit[], specifically the names and roles of the counsel providing advice to Boasberg . . ., including the role of counsel in Plaintiff's evaluation, hearing and termination.
6. [W]hether there is a conflict and/or appearance of impropriety in the representation of the administration and the Board in the Adenowo evaluation process, hearing, and termination by the Board."

Haynes

1. "[T]he Board's knowledge of and/or approval of policies and procedures, both written and unwritten concerning teacher evaluation and termination, 'ghost evaluators', and the degree to which the Board was aware of and either approved or 'rubber stamped' these policies.
2. [W]hether these delegations [as noted in Boasberg topic 1] were ultra vires;
3. [P]rocesses established by the school board and/or the superintendent for termination of teachers, the degree to which the Superintendent and the Board have delegated the right to institute these processes to others and to whom they have been delegated, and how and when the delegation was made;
4. [W]hether the Board has been informed of these, and of the Departmental policies and practices-some of which are unwritten-regarding evaluation 'ghost writers' and 'HR partners'.
5. [T]he hire and mission of 'ghost evaluators', the Board's knowledge or lack thereof of the direction and training given to the 'ghost evaluators' and whether the board was directly involved in approving by Board vote any of these policies, practices and procedures.
6. [T]he apparent 'advice of counsel' assertions made in [Boasberg's] affidavit[], specifically the names and roles of the counsel providing advice to Boasberg . . ., including the role of counsel in Plaintiff's evaluation, hearing and termination.
7. [W]hether there is a conflict and/or appearance of impropriety in the representation of the administration and the Board in the Adenowo evaluation process, hearing, and termination by the Board."

One other proposed topic for both deponents identified on page 6 of the Response is an inquiry "about the policies and practices of [the] administration with regard to evaluation of teachers by 'ghost writers' - policies which are unwritten, enforced by employees hired only through a handshake agreement - unbeknown to the governing body of the District - and not responsible to the Board of Education."

None of the proposed topics for the proposed depositions concerns Boasberg's or Haynes' personal decisionmaking processes and/or reasons for agreeing with the Plaintiff's termination. Indeed, Plaintiff specifically states that "Plaintiff does not intend to inquire of Boasberg and Haynes regarding the particular facts pertaining to Mr. Adenowo's performance and termination." Response at 6. Rather, the topics deal with policies and corporate knowledge. These topics may be addressed by a Rule 30(b)(6) deposition, in response to which Defendant may or may not designate Boasberg and/or Haynes, but in any event, will be required to produce witnesses who will testify truthfully and in a way that binds the Defendant. The only potential topic that concerns knowledge intimate to the deponents involves "advice of counsel" given to the two officials, but even that topic seeks only the identity and role of any such counsel. I do not believe this topic is sufficiently significant to require Boasberg and Haynes to personally testify; rather, such information can also be supplied by a Rule 30(b)(6) witness. While it is true that knowledge of a particular practice or policy by Boasberg or Haynes would be binding on the District, they are only two of a myriad of management officials whose knowledge of such facts would be binding (*i.e.*, would qualify as "notice") on the School District as a whole. I do not believe Plaintiff should be permitted to choose who will speak for the District.

Plaintiff also raises the argument that anyone who the District produces for a Rule 30(b)(6) deposition will be inadequate compared with the knowledge that Boasberg and Haynes have. However, in the event Plaintiff believes that the Defendant's designated witness(es) have not provided responsive answers, Plaintiff may move to require the production of Boasberg and/or Haynes.

In attempting to avoid having to obtain this information using a Rule 30(b)(6) deposition, Plaintiff asserts, for example, that "[o]nly Boasberg can testify about his individual knowledge of

the employment and district wide purpose of the evaluation 'ghost writers'; . . . the administrative policy underlying their employment efforts and the rationale of their hire without Board approval; . . . the source of funding supporting their hire and the justification for expending between $110,000 and $495,000 per year for the five years this program was in effect." Additionally, Plaintiff asserts that "[o]nly Haynes can testify to the Board's knowledge of and support of this program." Finally, Plaintiff asserts that only Boasberg and Haynes "can testify regarding the names of the individuals from whom they received legal advice . . . ." Response at 7. I disagree. The only possible relevance of these inquiries is official knowledge on the part of the administration, not these two individuals' personal knowledge. Neither of these individuals is a defendant in the case, but rather the school district itself. It is the defendant school district's knowledge of an approval of any allegedly inappropriate policy or practice that matters in a case such as this. It matters not through whom such knowledge is presented, but only that it is in fact presented in this case as corporate knowledge.

However, as noted above, in the event that Plaintiff's prognostication comes true, *i.e.*, that any request for administration or board knowledge will be met with objections, Plaintiff may reassert his request for these depositions. For the purpose of avoiding a potential additional round of briefing on a protective order, I find that Plaintiff has sufficiently established the relevance of these areas of inquiry, under the Federal Rules of Evidence standard for discoverable information, to justify a properly tailored Notice of Rule 30(b)(6) deposition, in the event any such topic has not been the subject of a prior Rule 30(b)(6) Notice.

### III.   Conclusion

Accordingly, for the reasons set forth herein, the Court **grants** Defendant's Motion for Protective Order [filed July 21, 2015; docket #59], but without prejudice in the event Defendant

does not produce satisfactory Rule 30(b)(6) witnesses.  Further, the Court authorizes Plaintiff to issue a Notice of Rule 30(b)(6) deposition for the topics identified herein.

Entered and dated at Denver, Colorado, this 9th day of October, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge